IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR-10-235-D |
| | ) | |
| DERRICK REUBEN SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is Defendant Derrick Reuben Smith's Motion to Suppress Statement [Doc. No. 35]. Defendant seeks to suppress evidence of statements he made to agents of the Federal Bureau of Investigation (FBI) during three interviews conducted before the Indictment was issued in this case. The government timely opposed the Motion, which is at issue.

On March 30, 2011, the Court conducted an evidentiary hearing regarding the Motion and other matters. Defendant appeared personally and through appointed counsel, Joseph L. Wells. The government appeared through Assistant United States Attorneys Scott Williams and Chris Stephens. Regarding this Motion, the Court heard the testimony of FBI Special Agent Tim Schmitz. The parties adopted the arguments presented in their written briefs. Upon consideration of the evidence, the case record, and the parties' arguments, the Court rules on the Motion as follows.

**Findings of Fact**

Agent Tim Schmitz has been a special agent of the FBI for 15 years working in the area of white collar crime, primarily mortgage fraud. Agent Schmitz first called Defendant on January 20, 2010, by ringing Defendant's house from the entrance gate of his housing development. The call apparently rang through to a cell phone, which Defendant answered. Defendant agreed to meet

Agent Schmitz later that day at the FBI office in Oklahoma City. Defendant was informed that the purpose of the meeting was for Agent Schmitz to ask questions about real estate transactions in which Defendant's wife had purchased houses from Aaron Dodson. Defendant was not informed that he was suspected of wrongdoing or that he was under investigation.

The FBI office in Oklahoma City is located within a fenced area that visitors can enter by ringing a buzzer at the front gate and being admitted by a receptionist. Once inside the gate, visitors enter the building through an entry area that contains a security check point and a receptionist's window. The agent's offices and interview rooms are located behind a closed door that is locked to visitors in the entry area; an agent must admit a person to the office area. From inside the office area, however, the door is unlocked to anyone wishing to leave.

Defendant came to the scheduled meeting on January 20, 2010, using his own transportation. He was interviewed by Agent Schmitz and another agent in a small interview room, approximately 8-feet by 8-feet, that contained a desk and three or four chairs. The agents identified themselves to Defendant and sat across from him at the desk. Defendant was seated on the side of the desk closest to the door of the room. The door contained a window, and was closed but not locked.

Agent Schmitz described the interview as "conversational." The agents asked Defendant questions and showed him documents, and he gave cogent responses. The agents did not display any weapons or make any threats or promises. Defendant was not physically restrained in any way, and he did not appear to be under the influence of intoxicants or drugs. Agent Schmitz testified that Defendant was not given *Miranda* warnings because he was not under arrest or in custody, but was free to go at the end of the interview. However, the agents did not tell Defendant he was free to leave or that he did not have to answer questions. The interview lasted approximately 45 minutes, and then Defendant left on his own.

On February 4, 2010, Agent Schmitz called Defendant on his cell phone and asked him to come back for a second interview. Defendant agreed and returned to the FBI office on his own. Agent Schmitz testified credibly that Defendant was not opposed to another interview and willingly came a second time. The interview took place in an interview room under the same circumstances as the first interview.

The third interview occurred on February 12, 2010, in the parking lot of a Chili's restaurant near the FBI office. Agent Schmitz called Defendant and asked to meet for the purpose of delivering a grand jury subpoena for records. Agent Schmitz testified that he offered to meet outside of the office because it was easier and more convenient for the witness. Defendant agreed to come, and they met in the parking lot standing next to their cars. Agent Schmitz was again accompanied by a second agent. He described the meeting as a brief encounter. Agent Schmitz testified that Defendant was free to leave after the agents gave him the papers they had come to deliver, and throughout the meeting, he was free not to answer their questions and to terminate the encounter.

**Fifth Amendment (*Miranda*)**

Defendant first asserts that the statements were obtained through custodial interrogations conducted in violation of *Miranda v. Arizona*, 348 U.S. 437 (1966). "*Miranda* rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'" *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir.2008) (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir.1993)); *see United States v. Jones*, 523 F.3d 1235, 1239-40 (10th Cir. 2008). The government bears the burden of proving that *Miranda* warnings were not required. *See United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir. 1994).

Upon careful consideration, the Court finds that none of the three interviews was a custodial interrogation of Defendant and, thus, no *Miranda* warning was required. Clearly, Defendant's

3

questioning by FBI agents was an "interrogation;" the government does not contend otherwise. However, the Court finds that Defendant was not "in custody" during any of the interrogations.

"A person is not 'in custody' for *Miranda* purposes unless his 'freedom of action is curtailed to a degree associated with formal arrest.'" *United States v. Rogers*, 391 F.3d 1165, 1169 (10th Cir. 2004) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)); *see Jones*, 523 F.3d at 1239. "Whether a suspect is in custody represents an objective determination. 'We therefore must determine whether a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest.'" *Jones*, 523 F.3d at 1239 (citations omitted; quoting *Chee*, 514 F.3d at 1112). The court of appeals has summarized the law in this area as follows:

> "The determination of custody, from an examination of the totality of the circumstances, is necessarily fact intensive." [*United States v.*] *Griffin*, 7 F.3d [1512] at 1518 [(10th Cir. 1993)]. We thus avoid hard line rules and instead allow several non-exhaustive factors to guide us. First, we consider "the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will." *Id*. Second, we look at "the nature of questioning," where "prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave." *Id*. Finally, by using the following helpful guideposts, we check whether police dominate the encounter:
>
>> [S]eparation of the suspect from family or colleagues who could offer moral support; isolation in nonpublic questioning rooms; threatening presence of several officers; display of a weapon by an officer; physical contact with the subject; and an officer's use of language or tone of voice in a manner implying that compliance with the request might be compelled.
>
> *Id*. at 1518-19. Although these factors are useful, we emphasize that we must look to the totality of the circumstances and consider the police-citizen encounter as a whole, rather than picking some facts and ignoring others.

*United States v. Jones*, 523 F.3d 1235, 1239-40 (10th Cir. 2008).

In this case, although FBI agents did not tell Defendant that he was free to terminate the interviews or to decline to answer their questions, Defendant voluntarily agreed to attend each of the interviews. The interviews were not conducted in a threatening or coercive manner but in a

4

conversational tone. The interviews occurred on three different occasions, separated in time by days or weeks. Although two of them occurred in an interview room in a secure office setting, any suggestion that Defendant felt intimidated or uncomfortable in that setting is negated by the fact that he voluntarily returned a second time. The third interview occurred in an open, public place with no confinement or constraints. Under the totality of circumstances, the Court finds that no reasonable person in Defendant's position would have understood that any of the situations under which questioning occurred was the functional equivalent of a formal arrest. Therefore, Defendant had no *Miranda* rights in these situations.

## Voluntariness (*Jackson v. Denno*)

Under *Jackson v. Denno*, 378 U.S. 368 (1964), when a defendant timely objects to the admission of an incriminating statement, he must receive a hearing outside the presence of the jury to determine "both the underlying factual issues and the voluntariness of his confession." *Id*. at 380. The burden is on the government to prove by a preponderance of the evidence that the statements were voluntary. *See United States v. Pettigrew*, 468 F.3d 626, 633 (10th Cir. 2006); *United States v. Muniz*, 1 F.3d 1018, 1021 (10th Cir. 1993).

The issue of "voluntariness" is determined by "the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Relevant facts concerning the accused might include his age, education, intelligence, and prior experience with law enforcement; relevant facts concerning the interrogation might include advice to the accused concerning his constitutional rights, the length of detention, the location of the interrogation, the repeated or prolonged nature of the questioning, and the conduct of law enforcement officers. *See id.*; *see also Yarborough v. Alvarado,* 541 U.S. 652, 668 (2004); *United States v. Perdue*, 8 F.3d 1455, 1466 (10th Cir. 1993);

5

*Muniz*, 1 F.3d at 1022. The critical question is whether Defendant's statement was freely made or whether his "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225; *Perdue*, 8 F.3d at 1466; *Muniz*, 1 F.3d at 1022; *see also United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006).

Having conducted the hearing requested by Defendant, the Court finds that the statements Defendant made to FBI agents during the three interviews were voluntary. Defendant agreed to attend the meetings with FBI agents each time he was invited, and willingly came to each meeting. Although he was not advised of his constitutional or *Miranda* rights, there is no fact to suggest his capacity to determine for himself whether to speak with the agents and answer their questions was impaired in any way. Thus, under the totality of the circumstances presented by the evidence, the Court finds all statements by Defendant during the interviews were freely and voluntarily made.

## Conclusion

For these reasons, the Court finds that Defendant's statements to FBI agents were not obtained in violation of *Miranda* and that all Defendant's statements to FBI agents were voluntary.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Statement [Doc. No. 35] is DENIED.

IT IS SO ORDERED this __8th__ day of April, 2011.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE